CRAIG K. PERRY, Esq.
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., Suite 800
Las Vegas, NV 89102
Telephone: (702) 228-4777
Fax: (702) 943-7520
Email: cperry@craigperry.com

CHRISTOPHER E. ROBERTS, Esq.
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 130
Clayton, MO 63105
Telephone: 314-863-5700
Email: croberts@butschroberts.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff*
*JASON CARRODINE*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JASON CARRODINE, *individually, on behalf of himself, and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>TRAVEL CLUB ENTERPRISES, LLC D/B/A CLUB TRAVELO<br><br>Defendant. | Case No.<br>Dept. No.:<br><br><br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Jason Carrodine ("Carrodine"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Travel Club Enterprises, LLC d/b/a Club Travelo ("Defendant"), states:

///

1

**BACKGROUND**

1. Plaintiff Jason Carrodine ("Plaintiff" or "Carrodine") brings this case to protect his privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2. Specifically, this case is about stopping incessant telemarketers like Defendant from placing incessant and unwanted calls to the phones of Carrodine and likely thousands of other persons who have placed their phone numbers on the National Do-Not-Call Registry ("DNC List").

3. Carrodine brings this class action lawsuit, individually, and on behalf of all others similarly situated, against Defendant for placing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

5. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. The TCPA affords protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c) *et seq.*; 47 C.F.R. § 64.1200(c).

7. Since 2003, persons who register their cell phone numbers on the DNC List are considered "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re*

*Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8. Defendant improperly placed calls to the phones of Carrodine and the putative class members despite their phone numbers being on the DNC List.

9. The receipt of telemarketing calls is a rampant problem in this country. For example, in the first nine months of 2024 alone, approximately 38.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Oct. 2, 2024).

10. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11. In fact, in 2023 alone, there were over two million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at*: https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Oct. 4, 2024).

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL

STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## PARTIES AND BACKGROUND ON THE PARTIES

13. Carrodine is an individual who at all times material to this Complaint has resided in Las Vegas, Nevada and has been a citizen of the State of Nevada.

14. Defendant is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada. Defendant has been in good standing to transact business throughout the United States at all times material to this Complaint.

15. Defendant is a travel club that sells "travel memberships" that claim to provide its customers access to discounted hotels, cruises, tours, car rentals and resorts.

16. Defendant aggressively markets its markets its products and services, among other ways, by placing telemarketing phone calls.

17. Through these telemarketing calls, Defendant will offer potential customers "gifts" such as travel or tickets to a show.

18. Consistent with these marketing tactics, Defendant's website, (www.clubtravelo.com) offers potential customers "gifts" such as vacations, activity tickets, gift cards and restaurant certificates for attending a presentation about Defendant's products and services.

19. Defendant's website further states, "Guests must attend the entire presentation to be eligible for complimentary gifts."

20. For example, one consumer complained about Defendant's aggressive telemarketing practices as follows:

///

> . . . After back to back calls all hours of the night I gave in and decided to attend, stayed there d\*\*\* near 3 hours giving the same gimmicks as a timeshare . . . they give you the 'free vacation' WHICH IS NOT FREE!!!!! And a $500 hotel voucher that they don't give you . . . .

21. Another consumer complained about Defendant's telemarketing practices as follows:

> This company, or one of its advertisers, has repeatedly called my cellphone which is on the Federal Do Not Call list, even though it's been told to stop. . . .

22. Another consumer complained:

> TRAVELO solicited by phone to attend a seminar in downtown regarding discounted travel. . . . In exchange for our attendance, we were offered one of 4 FREE travel programs. . . . HOWEVER, THIS PROMISE WAS VERY MISLEADING AND CERTAINLY NOT ACCURATE WHATSOEVER.

23. Carrodine was not in the market for Defendant's products and services when he received the calls at issue.

24. Carrodine did not provide Defendant or anyone acting on its behalf any form of consent to contact him on his phone.

**JURISDICTION AND VENUE**

25. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

26. This Court has jurisdiction over Defendant because, among other things, Defendant: has its principal place of business in Nevada, transacts business in Nevada,

5

purposefully directed its marketing efforts to Carrodine in Nevada, utilized Nevada area codes in placing the calls at issue to Carrodine, regularly markets its services in the State of Nevada, and otherwise has continuous and systematic contacts with the State of Nevada.

27. The harm was sustained by Carrodine in this District and Carrodine has resided in this District at all times relevant to this Complaint.

28. For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**DEFENDANT'S CALLS TO CARRODINE AND OTHERS**

29. At all times relevant to this Complaint, Carrodine was the owner of a cell phone bearing the phone number 702-XXX-9862.

30. Carrodine placed his phone number on the national Do Not Call Registry ("DNC List") on October 23, 2014, for the purpose of being left alone by telemarketers.

31. The account for Carrodine's phone is held in his personal name and is not held in the name of a business.

32. Carrodine uses his phone primarily for personal and household purposes, namely, communicating with friends and family members.

33. Carrodine and the putative class members did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent, to Defendant or anyone acting on Defendant's behalf to place calls to his cell phone.

34. Carrodine never provided his personal information on a website maintained by Defendant or anyone acting on Defendant's behalf.

35. On February 8, 2024, Carrodine received a call on his cell phone number from or on behalf of Defendant that appeared as having originated from phone number 702-644-6977.

36. The caller asked Carrodine to attend a presentation and in exchange he would receive a free multi-night stay at a destination of his choosing or free tickets to a show. The caller identified the company providing the presentation as Club Travelo. Carrodine advised the caller that he would call them back if he was interested and to no longer call him.

37. On February 9, 2024, Carrodine missed a call on his phone from or on behalf of Defendant. This call appeared on Carrodine's phone as originating from phone number 702-756-8950. Carrodine immediately returned the call and asked if the caller was calling from Club Travelo. The caller confirmed they were calling for Club Travelo. Carrodine again asked to no longer be called.

38. On February 9, 2024, approximately 1 minute after advising Carrodine again advised he no longer wished to be called, Defendant or someone acting on behalf of Defendant again called Carrodine from phone number 702-756-8950.

39. On April 19, 2024, Carrodine received another call on his phone from or on behalf of Defendant. This call appeared on Carrodine's phone as originating from phone number 702-729-1251. The caller again asked Carrodine to attend a presentation in exchange for gift such as free lodging or tickets to a show. The caller advised the presentation would be at a Hilton Garden Inn that weekend in Las Vegas, Nevada. The caller again identified the company providing the presentation as Club Travelo. Carrodine again advised he did not wish to be called.

40. On April 19, 2024, after Carrodine advised he no longer wished to be called, Carrodine received three additional calls from or on behalf of Defendant. All three calls against appeared as originating from phone number 702-729-1251.

41. To determine whether Defendant was the party placing the incessant calls to him, Carrodine visited the Hilton Garden Inn at the date and time specified by the caller. Carrodine did not attend the presentation but briefly stopped by the location. Carrodine received a business card from a person named Dmitriy Tsibulskiy who was identified as Defendant's "Director of Sales." The business card also included Defendant's name, logo, and website.

42. Carrodine did not provide his name or contact information to Defendant at the Hilton Garden Inn and did not provide Defendant any form of consent to contact him on his phone.

43. On April 24, 2024, Carrodine received two additional calls on his phone from or on behalf of Defendant. These calls appeared on Carrodine's phone as again originating from phone number 702-729-1251.

44. On May 13, 2024, Carrodine received another two calls on his phone from or on behalf of Defendant. These calls appeared on Carrodine's phone as again originating from phone number 702-729-1251.

45. On May 18, 2024, Carrodine received another call on his phone from or on behalf of Defendant. This call appeared on Carrodine's phone as again originating from phone number 702-729-1251.

46. On May 23, 2024, Carrodine received another call on his phone from or on behalf of Defendant. This call appeared on Carrodine's phone as originating from phone number 702-703-4756. Like the previous calls Carrodine received, the caller against identified

8

themselves as being with Club Travelo. Carrodine again advised he was not interested and asked to no longer be called.

47. On information and belief, Defendant knew that it or those acting on its behalf should not have placed calls to Carrodine and the putative class members, yet incessantly placed calls to them.

48. The calls Defendant placed to Carrodine and the putative class members were harassing, irritating, invasive and annoying.

49. Defendant's calls invaded Carrodine's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

50. Defendant's calls caused Carrodine and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted calls.

**DIRECT AND VICARIOUS LIABILITY**

51. Without the benefit of discovery, and because Defendant disclosed its identity through the telemarketing calls at issue, Carrodine assumes Defendant directly placed the calls at issue.

52. However, if some or all the calls were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

53. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically

> places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

54. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

55. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

56. If Defendant directly placed the calls at issue to Carrodine and the putative class members, Defendant is directly liable for the placing of such calls.

57. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

58. If Defendant did not directly place the calls at issue to Carrodine and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

59. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting revenue generated through unlawful telemarketing communications.

60. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

61. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

62. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

63. For the counts identified below, if Defendant directly placed the calls at issue, they are directly liable. Alternatively, to the extent any calls were made by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

64. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Carrodine brings this Complaint as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

65. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Carrodine seeks to represent the following class:

> **National DNC List Class:** All persons in the United States from four years prior to the filing of this action through class certification: (1) who received two or more calls during a 12-month period in connection with the marketing of Defendant's products or services; (2) whose number was registered on the Do Not Call Registry for more than 30 days at the time the calls were received; and, (3) whose number is registered to an individual and not a business.

> **Internal DNC List Class:** All persons in the United States from four years prior to the filing of this action through class certification to whom: (1) Defendant placed calls marketing its products or services, (2) Defendant placed more than one call to the person in a twelve-month period, and, (3) Defendant placed said calls after the person who received the call requested that Defendant stop calling.

66. Carrodine reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

67. The members of the proposed classes are so numerous that joinder of all members is impracticable. Carrodine reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

68. Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

69. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

   a. Whether Defendant's conduct of placing calls to persons whose phone numbers are registered on the DNC List violates 47 U.S.C. § 227(c);

   b. Whether Defendant's conduct of placing calls to persons whose phone numbers should have been placed on Defendant's Internal Do-Not-Call List violates 47 U.S.C. § 227(c);

   c. Whether the calls were "solicitations" as defined by the TCPA;

   d. whether Defendant maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls to numbers on the DNC List;

   e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

   f. Whether Carrodine and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

70. Carrodine's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

71. Carrodine and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Carrodine's interests do not conflict with the interests of the proposed classes he seeks to represent. Carrodine has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

72. Carrodine's counsel will vigorously litigate this case as a class action, and Carrodine and his counsel are aware of their responsibilities to the putative members of the classes and will discharge those duties.

73. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

74. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

75. Questions of law and fact, particularly the propriety of placing of calls to phone numbers on the DNC List, and to persons whose numbers should have been placed on

Defendant's Internal Do-Not-Call List, predominate over questions affecting only individual members.

76. Defendant has acted or has refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"),**

**47 U.S.C. § 227(c) *et seq.* (National DNC List Violations)**

77. Carrodine incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

78. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

79. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

80. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

81. By placing calls to Carrodine and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

82. Defendant and/or those acting on its behalf knew or should have known that Carrodine's and the putative class members' phone numbers were registered on the DNC List.

83. Defendant and/or those acting on its behalf willfully violated the TCPA when placing calls to Carrodine's and the putative class members' phones.

84. Carrodine and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant and/or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant and/or those acting on its behalf willfully violated the TCPA.

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests the Court enter judgment in his favor and against Defendant Travel Club Enterprises, LLC d/b/a Club Travelo, and grant the following relief:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Carrodine as the class representative;

B. Enter an order appointing Craig K. Perry & Associates and Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Carrodine and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated Section 227(c) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Carrodine and the putative class members that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from placing calls to persons on the DNC List without first obtaining the proper form of consent;

E. Award Carrodine and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

G. Award Carrodine and the class such further and other relief the Court deems just and appropriate.

**Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (Internal DNC List Violations)**

85. Carrodine incorporates by reference the allegations of the previous paragraphs

15

as if fully stated in this Count.

86. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover up to $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

87. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

88. These procedures must meet several minimum standards, including, but not limited to:

> **(1) *Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2) *Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3) *Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

> **(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> **(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> **(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

89. Defendant failed to maintain and/or implement these minimum standards by repeatedly placing calls to Carrodine and the putative class members after Carrodine and putative class members requested that Defendant stop calling them.

90. In addition, the TCPA allows the Court to enjoin Defendant from placing phone calls to phone numbers that should have been placed on Defendant's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

91. By placing calls to the phones of Carrodine and the putative class members after their numbers should have been placed on Defendant's internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

92. Defendant knew or should have known that Carrodine and the putative class members did not wish to receive calls as such persons expressly advised Defendant that they did not wish to receive calls from Defendant.

17

93. Carrodine and the putative class members are entitled to damages of up to $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests the Court enter judgment in his favor and against Defendant Travel Club Enterprises, LLC d/b/a Club Travelo, and grant the following relief:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Carrodine as the class representative;

B. Enter an order appointing Craig K. Perry & Associates and Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Carrodine and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated Section 227(c) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Carrodine and the putative class members that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from placing calls to persons on the DNC List without first obtaining the proper form of consent;

E. Award Carrodine and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

G. Award Carrodine and the class such further and other relief the Court deems just and appropriate.

///

///

///

///

///

///

# DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, and in accordance with Fed R. Civ. P. 38, and LR 38-1, Plaintiffs demands a trial by jury.

Dated this 24th day of October, 2024.

                        CRAIG K. PERRY & ASSOCIATES

                        /s/ Craig K. Perry
                        Craig K. Perry, Esq.
                        Nevada Bar No. 3786
                        2300 W. Sahara Ave., Suite 800
                        Las Vegas, Nevada 89102
                        Telephone: (702) 228-4777
                        cperry@craigperry.com

                        BUTSCH ROBERTS & ASSOCIATES LLC

                        */s/ Christopher E. Roberts*
                        Christopher E. Roberts (pro hac forthcoming)
                        7777 Bonhomme Avenue, Suite 1300
                        Clayton, MO 63105
                        Telephone: (314) 863-5700
                        croberts@butschroberts.com
                        *Subject to Pro Hac Vice*

                        *Attorneys for Plaintiff*